GUIDRY, Judge.
Plaintiff, O. L. Wright, alleging his ownership of an undivided two-thirds (Yards) interest in two tracts of land situated in Catahoula Parish, Louisiana, instituted this suit seeking a partition in kind and in the alternative a partition by licitation of said properties. The alleged owners of the remaining one-third (Yard) interest, Succession of J. L. Wright, represented by French Wright, Administrator, Barbara Jean Wright Blood, Linda Wright Tedford and Gloria Wright Gordon, sole heirs of J. L. Wright, were named as parties defendant.[1]
The tracts of land sought to be partitioned contain respectively, 78 acres and 6 acres and are situated in Section 40 Township 9 North, Range 6 East, Catahoula Parish, Louisiana.
Following institution of this suit the defendants filed exceptions of no cause of action; no right of action; prematurity; improper cumulation of actions; and, failure to join indispensable parties. The first four named exceptions are directed to plaintiff’s demand for a partition of the 78 acre tract. The last exception, i.e., failure to join indispensable parties, is directed to the demand for a partition of the 6 acre tract.[2] The exceptions were referred to the merits following which defendants filed answer generally denying plaintiff’s ownership of any interest in the tracts of land and his consequent right to demand a partition thereof.
The record reflects the following with regard to the record title to the 78 acre tract:
(a) In the year 1926 the 78 acre tract, together with a 194 acre tract of land situated in Section 21, T. 9 N., R. 6 E., was owned by L. P. Wright husband of Catherine Anderson. (See stipulation tr. Pg- 41)
(b) By authentic act of credit sale dated June 29, 1926, recorded July 1, 1926 in Book 35, folio 107, conveyance records of Catahoula Parish, Louisiana, L. P. Wright, husband of Catherine Anderson, conveyed the properties mentioned in item (a) above to G. G. Wright and J. L. Wright, both single men of age. (This sale (Exhibit P-1; D-l) is hereafter referred to as the 1926 sale).
(c) By authentic act dated April 6, 1935, recorded April 16, 1935 in Book 48, folio 27, conveyance records of Catahoula Parish Louisiana, G. G. Wright and J. L. Wright, entered into a conventional partition of the lands acquired in the 1926 sale, less those previously sold, in which partition J. L. Wright was allotted and acquired the 78 acre tract. (Exhibit P-13; D-2).
(d) J. L. Wright, who was married but once and then to Ella Mae Dozier in the year 1935, died intestate on June 19,1972, survived at his death by three and only three children born of his marriage, none being adopted, namely, Barbara Jean Wright Blood, Linda Wright Tedford and Gloria Wright Gordon.
Plaintiff does not question that record title to the 78 acre tract now vests solely in the three heirs of L. P. Wright, under the chain of title delineated above. He contends however, that as a result of a verbal agreement or understanding entered into in *1295 the year 1926, title to all land then owned by L. P. Wright and Catherine Anderson was placed in the names of their eldest sons, G. G. Wright and J. L. Wright, for purposes of convenience only and so that such land could later be disbursed to the twelve children of L. P. Wright and Catherine Anderson. He contends further that although the partition deed of 1935 purported to convey the 78 acre tract solely to J. L. Wright, in truth and in fact as a result of a verbal agreement, the latter acquired such title for himself, his brother John W. Wright, and plaintiff, in equal proportions. Defendants deny that there was any such verbal agreement and further deny that the conveyances referred to were not genuine.
We digress at this point to note that although plaintiff in his petition alleges generally that no consideration was paid in connection with the 1926 sale he does not seek to have such sale and the subsequent partition declared simulated contracts. R.C.C. Articles 2239, 2444, and 2480. Rather, as aforesaid, he confirms the validity of these contracts but seeks a decree recognizing that the grantee in such written instruments, i. e., L. P. Wright, was acting not only for himself but also for plaintiff and John W. Wright.
The trial judge, over timely objection by defendants, permitted the introduction of parol evidence tending to establish the alleged verbal agreements referred to. In addition to this parol evidence plaintiff introduced as exhibit P-9 a quitclaim deed from John W. Wright to O. L. Wright which purports to convey all right, title and interest of the grantor in the 78 acre tract. On the basis of this evidence the trial court rendered judgment recognizing plaintiff, 0. L. Wright, as owner of an undivided one-half interest[3] in the 78 acre tract and directed that said tract of land be divided as follows:
“The one-half (V2) interest herein allotted to 0. L. Wright is located on the side of the property so as to cover and embrace the “camp house” that 0. L. Wright presently uses or occupies and the one-half interest herein allotted to the heirs of Langston Wright is the divided one-half interest which includes the area and grounds of the home that his widow presently resides in. The boundary line between these tracts is to be established at a 90° angle from the blacktop highway at the location which will divide the property 50% on each side of said line or as close thereto as practical.”
Defendants have appealed. Plaintiff has answered the appeal of defendants praying that the judgment be amended so as to recognize plaintiff-appellee as owner of a full %rds undivided interest in the property in question. We reverse.
The trial court clearly erred in permitting the introduction of parol evidence which contradicted the verity and reality of the recitals contained in the 1926 deed and the 1935 partition deed and in accepting such evidence as creating title to an interest in the 78 acre tract in the plaintiff.
Plaintiff did not allege nor did he establish that the deeds referred to were executed as a result of fraud, mutual error or force. Plaintiff did not allege nor did he establish the existence of a counter-letter. Plaintiff did not propound interrogatories to defendants seeking to have the latter admit his ownership of an interest in the property sought to be partitioned. To the contrary defendants denied categorically, under oath, that plaintiff owned any interest in the 78 acre tract.
R.C.C. Article 2275 provides as follows:
“Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, *1296 as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.”
R.C.C. Article 2276 provides as follows:
“Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
Our courts, in interpreting Article 2276, have consistently held that in the absence of fraud, mutual error, or force, parol evidence is not admissible to vary, contradict or add to the terms of a written instrument.
In Scurto v. Le Blanc, 191 La. 136, 184 So. 567 (1938) our Supreme Court in disposing of a like issue stated as follows:
“It is axiomatic under the law and jurisprudence of this State that parol tevidence is inadmissable to create a title in one who never owned the immovable property or to show that the vendee was in reality some other person than the person named in the act of sale. Ceromi v. Harris, 187 La. 701, 175 So. 462, and the authorities therein cited.
And it has been held that the rule finds no exception in the case of a purchase of real estate by an agent with funds alleged to belong to his principal. Hackenburg v. Gartskamp, 30 La.Ann. 898; Perrault v. Perrault, 32 La.Ann. 635; Stierle v. Kaiser, 45 La.Ann. 580, 12 So. 839. Even where real estate is acquired with stolen money the owner of the money does not become the owner of the property. George v. Campbell, 26 La.Ann. 445. It is also the general rule of our jurisprudence that the verity and reality of authentic sales of immovable property can be assailed only in two ways: ‘First, by means of a counter letter; second, by the answers of the other party to interrogatories on fact and articles, which stand in lieu of and are equivalent to a counter letter.’ Godwin v. Neustadtl, 42 La.Ann. 735, 7 So. 744.
When answers to interrogatories on facts and articles are used to supply the place of a counter letter, they are not subject to contradiction by anything short of a counter letter or other written evidence. Id.
The rule finds its only relaxation where the owner of real estate is influenced by fraud or error to rest his title in another. LeBleu v. Savoie, 109 La. 680, 33 So. 729; Maskrey v. Johnson, 122 La. 791, 48 So. 266; Cuggy v. Zeller, 132 La. 222, 61 So. 209; Hodge v. Hodge, 151 La. 612, 92 So. 134.”
To the same effect as Scurto, supra, see: Succession of Nelson, 224 La. 731, 70 So.2d 665 (1953); Little v. Haik, 246 La. 121, 163 So.2d 558 (1964); Burt v. Valois, 144 So.2d 196 (La.App. 1st Cir. 1962); Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963); and, Miles v. Miles, 328 So.2d 394 (La.App. 3rd Cir. 1976).
Considering the codal and jurisprudential authorities above referred to it is abundantly clear that plaintiff has not shown that he acquired any interest in the 78 acre tract under the 1926 deed or the 1935 partition. Plaintiff’s only other claim to an interest in the subject land rests in the quitclaim deed from John W. Wright (exhibit P-9). It is equally clear that plaintiff acquired no interest in the 78 acre tract under this deed. The record fails to reflect that the grantor in the deed referred to ever acquired any interest in the land in controversy from anyone. To the contrary, Mr. John W. Wright candidly admitted in his testimony that he did not have record title to the interest which he purported to convey by this quitclaim deed.
Having determined that plaintiff does not now own and never did own any interest in the 78 acre tract it necessarily follows that he is not entitled to demand a partition thereof. Samuels et al. v. Parsons et al., 146 La. 262, 83 So. 548 (1919); Bickham v. Pitts et al., 185 La. 930, 171 So. 80 (1936); and, Broussard v. Allen, 198 La. 475, 3 So.2d 742 (1941).
For the above and foregoing reasons the judgment of the trial court is reversed and it is now ordered, adjudged and decreed that plaintiff’s suit be dismissed with preju *1297 dice. All costs at the trial level and on appeal are to be borne by the plaintiff-ap-pellee.
REVERSED AND RENDERED.

. All proceedings had in the matter of the Succession of J. L. Wright, including the appointment of French Wright as Administrator, were declared null, void and of no effect by judgment dated May 26, 1975 rendered in proceedings numbered 889 of the probate docket of the Seventh Judicial District Court (Tr. pg. 20). There was no appeal taken from that judgment. Thereafter the instant suit was dismissed as to the Succession and continued against the three individual defendants.

. Defendants’ exception of failure to join indispensable parties asserts that the 6 acre tract of land is owned by the twelve heirs of Langford Preston Wright and Catherine Anderson Wright; that plaintiff and defendants each own only a ‘/12th interest in said property; and, that the remaining ten heirs, or their descendants, are indispensable parties to a partition of this tract. Although the trial court did not rule on this exception the final judgment rendered and signed in this matter orders a partition only of the 78 acre tract. The judgment rendered being silent as to the 6 acre tract the ownership thereof and plaintiffs claimed right to a partition thereof is not before us on this appeal.

. In fixing the interest of O. L. Wright at V2 instead of 2/3rds the trial judge stated as follows in his brief reasons for judgment. “O. L. Wright ‘bought’ the interest of Jack Wright, which if considered, would give him an undivided two-thirds interest in the property in question. However, O. L. Wright testified that he and the late Langston Wright agreed that the property should be divided equally, therefore, O. L. Wright should receive clear title to one-half of the property in question . . .